IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:06cr395

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| vs. ) | |
| ) | ORDER |
| ) | |
| FAUSTO URIBO-RIOS ) | |
| ) | |

**THIS MATTER** is before the Court on the defendant's motions to dismiss a charge for illegally re-entering the United States based on the statute of limitations and, alternatively, improper venue (Doc. No. 8) and for allegedly prejudicial pre-indictment delay in violation of the Fifth Amendment (Doc. No. 9). The defendant filed an addendum to his motions (Doc. No. 10), and the government has responded (Doc. No. 11). For the reasons set forth below, the Court denies the defendant's motions.

I.  FACTUAL BACKGROUND

From the record before the Court, it appears that the defendant is a citizen of Mexico who has previously been deported numerous times between 1986 and 1995, including deportations for an aggravated felony (drug trafficking).[1] The defendant, using the alias of Franciso Rios Medina, returned to the United States and was arrested in August 2000 in Wake County, North Carolina, again for drug trafficking. On January 26, 2001, the defendant was sentenced to serve between 72 and 96 months in state prison, followed by 36 months of supervised probation.

---

[1] In reciting these facts for the purpose of resolving the pending motions, the Court is not expressing any view of the ultimate merits of the charge.

1

Although the defendant's drug trafficking offense occurred within the federal Eastern District of North Carolina, at some point the defendant was moved by the North Carolina Department of Corrections to a prison facility within the federal Western District of North Carolina where he completed his sentence.

On or about April 12, 2006, the Immigration and Customs Enforcement Agency ("ICE") received a routine report from the North Carolina State Bureau of Investigation about soon-to-be released inmates who may be subject to deportation.[2] When the defendant was released from state custody, he was arrested by ICE special agents on September 21, 2006. He signed both "Frausto Migel Uribe Rios" and "Francisco Medina" as his name when executing documents regarding his arrest and immigration status. Fingerprints from that arrest were compared by the Federal Bureau of Investigation ("FBI") to determine the defendant's true identity and criminal history.

The defendant was indicted on September 29, 2006, for entering and being found in the United States after previously being deported for the commission of an aggravated felony, in violation of 8 U.S.C. §§ 1326(a) and (b)(2). The instant motions followed.

---

[2] The defendant asserts that an immigration detainer was placed on him on June 7, 2004. (Doc. No. 8: Motion at 2). The government responds that ICE has no record of the detainer (Doc. No. 11: Response at 2). Whether ICE had notice of the defendant's presence in June 2004 is irrelevant to the Court's judgment because he was indicted within five years of that date and he has not shown any actual prejudice between then and September 2006.

II.      LEGAL DISCUSSION

      A.      Statute of Limitations Does Not Bar Prosecution

Title 8, United States Code, Section 1326 criminalizes three distinct acts when committed by a previously deported alien: (1) entering; (2) attempting to enter; or (3) being found in the United States. <u>United States v. Clarke</u>, 312 F.3d 1343, 1346 (11th Cir. 2002). When an alien enters or attempts to enter a recognized port of entry, those crimes are complete. <u>United States v. Gomez</u>, 38 F.3d 1031, 1034 (8th Cir. 1994). When an alien surreptitiously enters through some other location, the "found in" violation continues until he is discovered by immigration officials. <u>United States v. Almendarez</u>, No. 00-4421, 2001 WL 37544, 1 Fed. Appx. 234, at **1 (4th Cir. Jan. 16, 2001) (citing <u>Gomez</u>, 38 F.3d at 1034-35). "The five-year statute of limitations for prosecutions under § 1326 begins running as soon as the offense is complete." <u>Gomez</u>, 38 F.3d at 1034.

  The defendant argues that the clock began to run on January 26, 2001, when he was sentenced to six years in state prison, and, thus, expired on January 26, 2006, nine months prior to his indictment. While the government must exercise reasonable diligence to discover the presence and identity of illegal aliens, the defendant has not provided any case, nor has the Court found any, where immigration officials lacked actual knowledge, but were charged with constructive knowledge of an alien's presence in state prison. In fact, courts have uniformly rejected the defendant's position.

In <u>Gomez</u>, the government had actual knowledge of the defendant's presence from his submission of fingerprints at an Immigration and Naturalization Service ("INS") Legalization Office. 38 F.3d at 1033. The court assumed, without deciding, that the INS negligently failed to

determine the defendant's true identity when it failed to complete a timely fingerprint comparison. Id. at 1037. Thus, the statute of limitations began to run from the time period when a typical fingerprint comparison should have been completed. Id. at 1038; see also United States v. DiSantillo, 615 F.2d 128, 135 (3d Cir. 1980) (statute of limitations began to run when defendant entered country at INS port of entry).

The circuits have distinguished Gomez and DiSantillo from the factual situation here: where state authorities have knowledge of the defendant's presence, but federal immigration authorities do not. The Tenth Circuit rejected a defendant's argument that INS's failure to discover his presence in a Florida prison was attributable to a lack of diligence where there was no dispute that state officials did not notify INS of the defendant's presence in the state. Clarke, 312 F.3d 1346-48. The Second, Fifth, Seventh, and Tenth Circuits have reached the same conclusion on similar facts, particularly where aliens used false names during their state prosecutions. United States v. Mercedes, 287 F.3d 47, 55 (2nd Cir. 2002) (claim regarding delay disingenuous where defendant attempted to conceal his true identity); United States v. Bencomo-Castillo, 176 F.3d 1300, 1304 (10th Cir. 1999) (INS not required to research criminal history of all persons arrested by city police; a check would not have discovered defendant's identity because he used an alias); United States v. Herrera-Ordones, 190 F.3d 504, 510-11 (7th Cir. 1999) (defendant not "found" until he was interviewed by INS agent in state prison and admitted true identity); United States v. Santana-Castellano, 74 F.3d 593, 598 (5th Cir. 1996) (same).

Here, it is undisputed that North Carolina officials did not notify ICE of the defendant's presence until near the end of the defendant's state sentence.[3] State records show that the defendant used the alias Franciso Rios Medina when arrested in Wake County; therefore, even if ICE agents had searched North Carolina records for the defendant, which no court has obligated them to do, they probably would not have found the person previously deported as Efrain Gomez-Gonzalez or Fausto Miguel Uribe-Rios. The record clearly shows that once the state notified ICE of the defendant's presence in April 2006, his true identity was discovered by ICE on or shortly after September 21, 2006, through an interview and fingerprint comparison. Accordingly, the defendant was indicted within five years of the time the defendant was "found" in the United States by immigration authorities through the exercise of diligence typical of law enforcement agencies.

B.  Venue Proper in the Western District of North Carolina

The defendant argues alternatively that venue in the Western District of North Carolina is improper because he was unwillingly transported into this district during the service of his state sentence. The Fourth Circuit has rejected this position in two unpublished decisions. In United States v. Barnett, No. 92-5295, 1993 WL 185640, 993 F.2d 1539, at *1 (4th Cir. June 1, 1993), a defendant argued he was brought into this district "under duress" when he was transported from South Carolina to Charlotte, North Carolina, for deportation proceedings. The court found a previously deported alien commits a § 1326 violation "everywhere he goes"; thus, venue was

---

[3] The defendant's supplement to his Motion references a North Carolina Department of Corrections policy to contact ICE when inmates are committed to the state system who may be in the country illegally. (Doc. No. 10: Addendum at 1-2). There has been no allegation or showing that this policy was actually followed in this case.

5

proper in this district. Id. In Almendarez, supra, the court found venue was proper in the district where immigration authorities were alerted to his location and became aware of his illegal status. In that decision, the court cited favorably the Seventh Circuit's opinion in Herrera-Ordones, 190 F.3d at 511. There, the court recognized that whether an alien is voluntarily present in a particular location has no relevance to venue, for venue is proper wherever the previously deported alien is "found." Id. (defendant in charging district by prison transfer).

In this case, there is no dispute that the defendant was in the Western District of North Carolina when ICE was alerted by state authorities of his location and confirmed his illegal status.[4] Therefore, venue in this district is proper.

    C.       Defendant Failed to Show Fifth Amendment Speedy Trial Violation

The defendant argues that his Fifth Amendment right to a fair trial has been substantially prejudiced by pre-indictment delay of over five years from his initial incarceration on state charges and more than two years from the placement of a detainer by a federal agency. (Doc. No. 9: Motion at 2). He claims this prejudice included the ability to serve federal and state sentences concurrently, the possible destruction of documentary evidence, and the possible disappearance of witnesses.

The Fourth Circuit has provided a two-prong test to determine whether pre-indictment delay violated a defendant's due process rights. United States v. Automated Medical Laboratories, Inc., 770 F.2d 399, 403 (4th Cir. 1985). First, the defendant bears the burden to

---

[4] Thus, the defendant's reliance on United States v. Hernandez-Hernandez, 291 F. Supp. 2d 490 (W.D. Tx. 2003) (federal immigrations officials found defendant in one district, but charged him in another) is misplaced as there is no proof that ICE was notified of the defendant's presence when he was incarcerated in the Eastern District of North Carolina.

prove actual prejudice. If that is shown, the government must then provide reasons for the delay, which the court balances against the established prejudice. Id. at 403-04.

Here, the defendant has not met his burden of showing actual prejudice. His claim regarding the inability to serve concurrent sentences can not be used to establish prejudice because a felon has no right to serve his federal and state sentences concurrently. United States v. Ferguson, No. 94-5326, 1995 WL 107358, at *3 (4th Cir. Mar. 15, 1995) (citing United States v. Fuzer, 18 F.3d 517, 520 (7th Cir. 1994)). Also, the defendant admits he is "unsure" if immigration records have been destroyed or are missing and he does not identify any persons with knowledge who are no longer available to testify. Therefore, the defendant has not shown that he actually suffered prejudice from the delay between the time he was "found" by immigration authorities and the time he was indicted.[5] Accordingly, the Court finds no violation of the defendant's Fifth Amendment right to a speedy trial.

III. CONCLUSION

**IT IS, THEREFORE, ORDERED** that the defendant's motions to dismiss the indictment based on the statute of limitations or improper venue (Doc. No. 8) and based on the Fifth Amendment (Doc. No. 9) are **DENIED**.

Signed: December 19, 2006

Robert J. Conrad, Jr.
Chief United States District Judge

---

[5] The defendant's failure to establish actual prejudice obviates the need for the government to provide any reason for the delay.